BRETT A. SHUMATE
Assistant Attorney General
PAUL E. WERNER
Assistant Director, Torts Branch
REGINALD M. SKINNER
Senior Trial Counsel
PAUL C. QUAST
Senior Trial Attorney
United States Department of Justice
P.O. Box 7146
Washington, D.C. 20044
(202) 616-4150
*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAYOR RAS BARAKA, <br><br> *Plaintiff,* <br> v. <br><br> ALINA HABBA, et al. <br><br> *Defendants.* | Hon. Brian R. Martinotti, U.S.D.J. <br><br> Civil Action No. 25-6846 <br><br><br><br> **Return Date: August 3, 2026** |

## DEFENDANTS' BRIEF IN SUPPORT OF
## A MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)
## OF THE FEDERAL RULES OF CIVIL PROCEDURE

On the Brief:
REGINALD SKINNER
PAUL QUAST

i

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ............................................................................. 1

II.   STATEMENT OF FACTS................................................................................... 2

III.  STANDARD OF REVIEW ................................................................................ 7

   A.  Rule 12(b)(1) ............................................................................................ 7

   B.  Rule 12(b)(6) ............................................................................................ 7

IV.   LEGAL ARGUMENT........................................................................................ 8

   A.  The Court Lacks Jurisdiction Over Plaintiff's State Tort Claims ................... 8

   1.  The United States Has Been Substituted as the Sole Defendant for Plaintiff's State Law Tort Claims................................................................................ 8

   2.  Plaintiff has Failed to Exhaust His FTCA Claims ........................................ 9

   3.  Plaintiff's FTCA Claims are Barred by Sovereign Immunity ....................... 11

   B.  A *Bivens* Remedy is Not Available ............................................................. 13

   1.  Plaintiff's Claims Present a New Context .................................................... 15

   2.  Numerous Special Factors Counsel Hesitation Here .................................... 17

   C.  The Defendants are Entitled to Qualified Immunity ..................................... 21

   D.  United States Attorney Habba is Entitled to Absolute Immunity ................. 25

   E.  The City's Claims Fail as a Matter of Law .................................................. 25

V.    CONCLUSION................................................................................................. 26

# TABLE OF AUTHORITIES

**Cases**

*Ahmed v. Weyker,*
    984 F.3d 564 (8th Cir. 2020) .................................................................................. 14

*Albert v. Yost,*
    431 F. App'x 76 (3d Cir. 2011) .............................................................................. 21

*Anderson v. Creighton,*
    483 U.S. 635, 640 (1987) ........................................................................................ 22

*Annappareddy v. Pascale,*
    996 F.3d 120 (4th Cir. 2021) ................................................................................. 20

*Arar v. Ashcroft,*
    585 F.3d 559 (2d Cir. 2009) ................................................................................... 20

*Ashcroft v. al-Kidd,*
    563 U.S. 731 (2011) .......................................................................................... 22, 23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .................................................................................................. 7

*Barry v. Anderson,* No.,
    22-3098, 2023 WL 8449246 (3d Cir. Dec. 6, 2023) ............................................. 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................................. 7

*Biase v. Kaplan,*
    852 F. Supp. 268 (D.N.J. 1994) ............................................................................ 10

*Bieregu v. Ashcroft,*
    259 F. Supp. 2d 342 (D.N.J. 2003) ....................................................................... 10

*Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,*
    403 U.S. 388 (1971) ............................................................................................. 1, 16

*Borawski v. Henderson,*
    265 F.Supp.2d 475 (D.N.J. 2003) ......................................................................... 12

*Brumfield v. Sanders,*
    232 F.3d 376 (3d Cir. 2000) ................................................................................... 12

*Carlson v. Green,*
    446 U.S. 14 (1980) .................................................................................................. 13

*Chiaverini v. City of Napoleon, Ohio,*
    602 U.S. 556 (2024) ................................................................................................ 23

*CNA v. United States,*
    535 F.3d 132 (3d Cir. 2008) ..................................................................................... 7

*Cohen v. Kurtzman,*
    45 F. Supp. 2d 423 (D.N.J. 1999) ........................................................................... 7

*Curley v. Klem,*
    298 F.3d 271 (3d Cir. 2002) ................................................................................... 22

*Davis v. Passman,*
    442 U.S. 228 (1979) ................................................................................................ 13

*Deaver v. Seymour,*
822 F.2d 66 (D.C. Cir. 1987) .............................................................................. 17

*Dempsey v. Bucknell Univ.,*
834 F.3d 457 (3d Cir. 2016).......................................................................... 23, 24

*Doughty v. United States Postal Serv.,*
359 F. Supp. 2d 361 (D.N.J. 2005).................................................................... 7

*Egbert v. Boule,*
596 U.S. 482 (2022) ................................................................................... passim

*F.D.I.C. v. Meyer,*
510 U.S. 471 (1994) ........................................................................................ 21

*Farah v. Weyker,*
926 F.3d 492 (8th Cir. 2019) .................................................................. 16, 17, 20

*Filippatos v. United States,*
No. 2:24-CV-11080 (BRM) (AME), 2025 WL 3765407 n.9 (D.N.J. Dec. 30, 2025). 12

*Fisher v. Hollingsworth,*
115 F.4th 197 (3d Cir. 2024) ................................................................. 14, 15, 19

*Gotha v. United States,*
115 F.3d 176 (3d Cir.1997)................................................................................ 7

*Gould Electronics Inc. v. United States,*
220 F.3d 169 (3d Cir. 2000)............................................................................... 7

*Harbury v. Hayden,*
522 F.3d 413 (D.C. Cir. 2008) .......................................................................... 9

*Harlow v. Fitzgerald,*
457 U.S. 800 (1982) ........................................................................................ 22

*Henry v. Essex Cnty.,*
113 F.4th 355 (3d Cir. 2024) ...................................................................... 16, 20

*Herman v. Muhammad,*
480 N.J. Super. 480........................................................................................ 12

*Hernandez v. Mesa,*
140 S. Ct. 735 (2020) ................................................................................. 13, 14

*Hunter v. Bryant,*
502 U.S. 224 (1991) ........................................................................................ 22

*Imbler v. Pachtman,*
424 U.S. 409 (1976) ........................................................................................ 25

*In re Sealed Case,*
829 F.2d 50 (D.C. Cir. 1987) .......................................................................... 20

*James v. City of Wilkes-Barre,*
700 F.3d 675 (3d Cir. 2012)............................................................................. 23

*Kaley v. United States,*
571 U.S. 320 (2014) ........................................................................................ 23

*Kalu v. Spaulding,*
113 F.4th 311 (3d Cir. 2024) ........................................................................... 16

*Kehr Packages, Inc. v. Fidelcor, Inc.,*
926 F.2d 1406 (3d Cir. 1991).......................................................................... 10

iv

*Kendig v. Stolar,*
173 F.4th 466 (3d Cir. 2026) ................................................................ 24

*Kentucky v. Graham,*
473 U.S. 159 (1985) .................................................................... 21, 25

*Kost v. Kozakiewicz,*
1 F.3d 176 (3d Cir. 1993) ..................................................................... 7

*Lightfoot v. United States,*
564 F.3d 625 (3d Cir. 2009) ................................................................. 7

*McNeil v. United States,*
508 U.S. 106 (1993) .......................................................................... 11

*Melo v. Hafer,*
13 F.3d 736 (3d Cir. 1994) ................................................................... 8

*Mirmehdi v. United States,*
689 F.3d 975 (9th Cir. 2012) ............................................................. 20

*Mitchell v. Forsyth,*
472 U.S. 511 (1985) .......................................................................... 22

*Monell v. New York City Dept. of Social Services,*
436 U.S. 658 (1978) .......................................................................... 21

*Muniz v. United States,*
149 F.4th 256 (3d Cir. 2025) ....................................................... 15, 17

*Osborn v. Haley,*
549 U.S. 225 (2007) ............................................................................ 9

*Pascale v. United States,*
998 F.2d 186 (3d Cir. 1993) ............................................................... 10

*Peroza-Benitez v. Smith,*
994 F.3d 157 (3d Cir. 2021) ............................................................... 22

*Pettibone v. Russell,*
59 F.4th 449 (9th Cir. 2023) .............................................................. 18

*Prather v. Att'y Gen. of U.S.,*
443 F. App'x. 766 (3d Cir. 2011) ....................................................... 10

*Saucier v. Katz,*
533 U.S. 194 (2001) .......................................................................... 22

*Schweiker v. Chilicky,*
487 U.S. 412 (1988) .......................................................................... 19

*Sheikh v. U.S. Dep't of Homeland Sec.,*
106 F.4th 918 (9th Cir. 2024) ............................................................ 16

*Shelton v. Bledsoe,*
775 F.3d 554 (3d Cir. 2015) ................................................................. 9

*State v. Dargon,*
165 N.J. Super. 500 ........................................................................... 24

*Swan v. Boardwalk Regency Corp.,*
969 A.2d 1145 ................................................................................... 12

*Thompson v. Clark,*
596 U.S. 36 (2022) ............................................................................ 24

*United States v. Giraud,*
  160 F.4th 390 (3d Cir. 2025) ....................................................................... 5
*United States v. Myers,*
  308 F.3d 251 (3d Cir. 2002) ...................................................................... 23
*United States v. Nixon,*
  418 U.S. 683 (1974) ................................................................................. 20
*United States v. Shearer,*
  473 U.S. 52 (1985) ................................................................................... 11
*Urda v. Sokso,*
  146 F.4th 311 (3d Cir. 2025) ............................................................... 22, 25
*White-Squire v. U.S. Postal Serv.,*
  592 F.3d 453 (3d Cir. 2010) ..................................................................... 11
*Wills v. USP Canaan,*
  635 F. App'x. 5, (3d Cir. 2015) ................................................................. 10
*Wilson v. City of Cherry Hill,*
  No. 10-3866, 2011 WL 3651274 (D.N.J. Aug. 18, 2011) .......................... 11
*Wilson v. Russo,*
  212 F.3d 781 (3d Cir. 2000) ..................................................................... 23
*Xi v. Haugen,*
  68 F.4th 824 (3d Cir. 2023) ............................................... 13, 15, 16, 17
*Ziglar v. Abbasi,*
  582 U.S. 120 (2017) ......................................................... 13, 14, 15, 19

**Statutes**

5 U.S.C. § 413 ............................................................................................ 18
5 U.S.C. § 417(f)(1)–(2) .............................................................................. 18
6 U.S.C. § 345(a)(1) .................................................................................... 18
18 U.S.C. § 13 ............................................................................................ 23
18 U.S.C. § 3006A ...................................................................................... 17
28 U.S.C. § 546 ............................................................................................ 5
28 U.S.C. § 1495 ........................................................................................ 17
28 U.S.C. § 2675(a) .................................................................................... 11
28 U.S.C. § 2679(b)(1) .................................................................................. 8
28 U.S.C. § 2679(d) ...................................................................................... 1
28 U.S.C. § 2679(d)(1) .................................................................................. 9
28 U.S.C. §§ 541–550 ................................................................................. 15
28 U.S.C. §§ 2073–74 ................................................................................. 17
28 U.S.C.A. § 2680(h) ........................................................................... 11, 12
Consolidated Appropriations Act, 2020, Pub. L. No. 116-93, § 532, 133 Stat 2317,
  2530 (2019) ............................................................................................ 2-3
N.J.S.A. § 2C:18-3 ...................................................................................... 23
NEWARK, N.J., CODE § 2:6-2.2 ................................................................. 25-26

**Regulations**

8 C.F.R. §§ 287.10(a)–(b) ........................................................................... 18

28 C.F.R. § 15.4(a).................................................................................... 9

**Other Authorities**

*Delaney Hall Detention Facility*, U.S. IMMIGR. & CUSTOMS ENF'T
    (Feb.   23,   2026),   https://www.ice.gov/detain/detention-facilities/delaney-hall-
    detention-facility.......................................................................................3, 18

*Hotline*,   U.S.   DEP'T   HOMELAND   SEC.   OFF.   INSPECTOR   GEN.,
    https://www.oig.dhs.gov/hotline (last visited June 8, 2026)..........................17-18

*Violation of Civil Rights or Civil Liberties Complaint*, U.S. DEP'T JUST. OFF.
    INSPECTOR   GEN.,   https://oig.justice.gov/hotline/violation-of-civil-rights-liberties
    (last visited June 8, 2026)..................................................................18

## I.    PRELIMINARY STATEMENT

Plaintiff Ras Baraka, Mayor of Newark, in his individual and official capacity, sues former Interim United States Attorney Alina Habba and Homeland Security Investigations ("HSI") Special Agent in Charge Ricky Patel for allegedly arresting and prosecuting him without probable cause. Plaintiff also claims Habba defamed him and placed him in a false light. Plaintiff alleges that at Habba's direction, Patel arrested and initiated a prosecution against him for trespassing in a federal immigration facility, despite Plaintiff having been invited into the facility. Habba then issued a statement regarding her office's prosecution of Plaintiff on social media and later participated in a telephone interview with a cable news network. Plaintiff seeks compensatory and punitive damages against Defendants under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and New Jersey tort law. The Court should dismiss this action for multiple reasons.

By operation of law, 28 U.S.C. § 2679(d), the United States has been substituted as the sole defendant for Plaintiff's state law tort claims, and those claims must proceed against the United States under the Federal Tort Claims Act (FTCA). But the Court lacks subject-matter jurisdiction over Plaintiff's claims against the United States because he has not exhausted his administrative remedies. Additionally, the United States has not waived sovereign immunity under the FTCA for claims arising from defamation, which includes Plaintiff's tort claim for "false light."

As to the Fourth Amendment claims, a *Bivens* remedy is not available. Plaintiff's claims against a Special Agent in Charge and United States Attorney for

arresting and prosecuting him for trespassing at an immigration facility during the course of a congressional inspection present a new context, and special factors counsel against the Court implying a *Bivens* remedy. Moreover, though Plaintiff added *Bivens* claims against the United States in the Second Amended Complaint, the Supreme Court has squarely foreclosed such claims.

The defendants are also entitled to absolute and qualified immunity. The decision to initiate a prosecution is a core prosecutorial function for which Habba is entitled to absolute immunity. Regardless, defendants had probable cause to arrest and prosecute Plaintiff for trespass when he failed to leave the property of a federal immigration facility when told to do so, even if he also claimed that he had initially been given permission to enter the premises. The fact that he eventually complied with the Special Agent in Charge's instructions did not extinguish the existence of probable cause. At the very least, for the purpose of their entitlement to qualified immunity, any alleged violation of the law by defendants was not clearly established.

Thus, the Court should dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II. **STATEMENT OF FACTS**[1]

The events at issue in this case took place within the context of a Congressional inspection of the Delany Hall detention facility. SAC ¶ 14; *see* Consolidated

---

[1]Plaintiff's allegations are wrong and conspicuously omit important undisputed facts (including those captured on video). Defendants will dispute Plaintiff's allegations at the appropriate time. Even recognizing that the Court must accept non-conclusory factual allegations at this initial stage, Plaintiff's complaint contains fundamental

2

Appropriations Act, 2020, Pub. L. No. 116-93, § 532, 133 Stat 2317, 2530 (2019) (prohibiting DHS from using its funding to prevent members of Congress or their employees "from entering, for the purpose of conducting oversight, any facility operated by or for the Department of Homeland Security used to detain or otherwise house aliens"). Delany Hall is a U.S. Immigration and Customs Enforcement ("ICE") detention facility, owned and operated by the GEO Group Inc. under a contract with the Department of Homeland Security ("DHS"). SAC ¶ 8; *see Delaney Hall Detention Facility*, U.S. IMMIGR. & CUSTOMS ENF'T (Feb. 23, 2026), https://www.ice.gov/detain/detention-facilities/delaney-hall-detention-facility.

On May 9, 2025, three members of the United States House of Representatives arrived to inspect the facility. SAC ¶ 14. One of the members had invited Plaintiff, the Mayor of Newark, New Jersey (and then-candidate for the New Jersey Democratic gubernatorial primary election) to attend a press conference outside the facility following the inspection. *Id.* ¶ 15.

Plaintiff arrived at the facility after the members of Congress had already entered. *Id.* ¶ 18. He spoke to members of the public outside of the gates of Delany Hall. *Id.* Soon after, "many" members of the public "began chanting that [Plaintiff] should be allowed to join the members of Congress." *Id.* ¶ 19. A "Geo Group guard" then allegedly invited Plaintiff to enter into the fenced area surrounding Delany Hall, "stating that it would 'calm the crowd.'" *Id.* ¶ 20. The guard opened the gate and

---

pleading deficiencies and jurisdictional defects warranting dismissal of the complaint in full.

3

Plaintiff stepped inside. *Id.* Plaintiff then waited a few feet inside the fenced area surrounding Delany Hall for about forty minutes. *Id.* ¶ 21.

Agent Patel approached Plaintiff and told him to leave the property. *Id.* ¶ 22. Plaintiff responded that he had been invited onto the property, but Patel disputed that. *Id.* The members of Congress approached the interaction from inside the facility, told Patel that they had been waiting for over an hour, and "expressed their desire that [Plaintiff] join them." *Id.* ¶ 24. After the members of Congress made this request, Patel "threatened to arrest" Plaintiff. *Id.* In response, Plaintiff stated he was leaving and Patel replied "Okay, go." *Id.* Plaintiff then began to leave, approximately five minutes after Patel had initially instructed him to go, accompanied by one of the members of Congress. *Id.* Plaintiff exited the Delany Hall grounds about a minute later. *Id.* ¶ 26.

The members of Congress then became aware of a plan to arrest Plaintiff. *Id.* ¶ 27. The members of Congress "walked with the DHS agents through the open gate to join" Plaintiff outside of the facility. *Id.* ¶ 28. About five minutes after Plaintiff left the Delany Hall ground, "approximately 20 DHS agents, many armed and masked, descended on [Plaintiff] and members of Congress." *Id.* ¶ 29. At the direction of Agent Patel, the agents then handcuffed and arrested Plaintiff. *Id.* ¶¶ 30–31. DHS "representatives" brought Plaintiff by car to another facility. *Id.* ¶ 32. There, Plaintiff was photographed, fingerprinted, and interviewed. *Id.* ¶¶ 32–33. Plaintiff stated during the interview that he was invited onto the Delany Hall grounds by a GEO Group employee and that he left when he was ordered to do so. *Id.* ¶ 33.

At 3:05PM, after Plaintiff had been arrested, but before he had been transported to the other DHS facility, United States Attorney Alina Habba made a statement about the arrest on a personal social media account. *Id.* ¶ 34.[2] The post stated:

> The Mayor of Newark, Ras Baraka, committed trespass and ignored multiple warnings from Homeland Security Investigations to remove himself from the ICE detention center in Newark, New Jersey this afternoon. He has willingly chosen to disregard the law. That will not stand in this state. He has been taken into custody. NO ONE IS ABOVE THE LAW.

*Id.* According to Plaintiff, this post was "false and defamatory." *Id.* ¶¶ 34–35. Later that day, Habba "participated in a telephone interview with Fox News during which she continued to make false and defamatory statements" about Plaintiff's arrest. *Id.* ¶ 36. These statements included: "[Plaintiff] refused to leave, was put under arrest inside the facility, walked out when he was told he was under arrest, and then was cuffed" and "[Plaintiff] was inside and told he would be under arrest inside when he refused to leave after several notifications that he should remove himself. He chose not to do so and then was placed under arrest when he walked out of the facility." *Id.* Plaintiff further alleges that Patel and Habba later conspired with other DHS officials "in promoting a false and defamatory narrative about the events on May 9, 2025." *Id.* ¶ 39.

---

[2] Habba was sworn in as Interim United States Attorney on March 28, 2025. *United States v. Giraud*, 160 F.4th 390, 395 (3d Cir. 2025). The events of this case occurred in early May 2025, well within the 120-day appointment window set by 28 U.S.C. § 546. There is no question Habba was lawfully occupying the position of Interim United States Attorney at the time of the events of this case.

Plaintiff says that Habba and Patel maliciously conspired "to effectuate the arrest premised upon a knowingly false Affidavit." *Id.* ¶¶ 40, 42. Allegedly, the affidavit falsely stated that Plaintiff "did . . . enter and remain" in the Delany Hall grounds, despite the fact that he had been invited onto the property and that he left the property when ordered to do so. *Id.* ¶¶ 40–41. Plaintiff was held in federal custody for over five hours, in part due to intentional delays by DHS (at Patel's direction). *Id.* ¶¶ 43–44. At approximately 7:00PM on the evening of the arrest, Plaintiff had his initial appearance in federal court virtually from DHS headquarters. *Id.* ¶ 45.

Plaintiff alleges that, during the course of his prosecution, Habba threatened him with additional charges for resisting arrest "if he did not agree to give up his right to sue for attorneys' fees." *Id.* ¶ 49. Plaintiff refused. *Id.* On May 19, 2025, Habba moved to dismiss the charges against Plaintiff. *Id.* ¶ 50. The court granted the motion. *Id.* ¶ 51.

Plaintiff does not allege that he exhausted his administrative remedies against the United States. Indeed, Plaintiff has neither pleaded nor, in fact, completed exhaustion. *See* Exhibit B, Declaration of Elijah F. Jenkins (attesting that Plaintiff did not file an administrative tort claim with the United States Department of Justice until June 12, 2025, and that the claim lacked proper support). As discussed below, the Court lacks subject-matter jurisdiction over Counts Three and Four, as Plaintiff

did not attempt to exhaust administrative remedies until *after* he filed his original complaint in this Court.[3]

## III.    STANDARD OF REVIEW

### A. Rule 12(b)(1)

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "attacks the right of a plaintiff to be heard in Federal Court." *Doughty v. United States Postal Serv.*, 359 F. Supp. 2d 361, 364 (D.N.J. 2005) (quoting *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999)). The court may dismiss for lack of subject-matter jurisdiction at any time regardless of whether an answer to the complaint has been filed or the parties have conducted discovery. *CNA v. United States*, 535 F.3d 132, 145-46 (3d Cir. 2008). The burden is on a plaintiff to establish the court's jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009).

### B. Rule 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (citing *Bell Atl.*

---

[3] Consideration of extrinsic evidence concerning the Court's subject-matter jurisdiction is permissible under Federal Rule of Civil Procedure 12(b)(1). *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir.1997)).

7

*Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court need not consider "legal conclusions" contained within a complaint, and "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678.

## IV.   LEGAL ARGUMENT

### A. The Court Lacks Jurisdiction Over Plaintiff's State Tort Claims

The Court should dismiss Plaintiff's defamation and false light claims for lack of subject-matter jurisdiction for two reasons. First, Plaintiff has not exhausted his administrative remedies. Second, the FTCA does not waive sovereign immunity for claims arising out of the kind of defamatory conduct Plaintiff alleges.

### 1. The United States Has Been Substituted as the Sole Defendant for Plaintiff's State Law Tort Claims

Count Three asserts a state law claim for defamation against Ms. Habba, while Count Four asserts a state law claim for "false light" invasion of privacy. As a matter of law, these common law tort claims are converted to claims against the United States under the FTCA.

Under the Federal Employees Liability Reform and Tort Compensation Act of 1988, or the "Westfall Act," a damages claim against the United States under the FTCA is the exclusive remedy for the negligent or wrongful act or omission of any federal employee acting within the scope of employment. 28 U.S.C. § 2679(b)(1); *accord Melo v. Hafer*, 13 F.3d 736, 739 (3d Cir. 1994) ("The Act accomplishes this by providing that the Federal Tort Claims Act supplies the only remedy against the United States for such claims, and that so long as any employee whose act or

8

omissions gave rise to the plaintiff's claim was 'acting within the scope of his [or her] office or employment,' any other 'civil action or proceeding for money damages . . . against the employee . . . is precluded.'"). The FTCA empowers the Attorney General or his designee to certify that an employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose. 28 U.S.C. § 2679(d)(1). By operation of law, this certification substitutes the United States as the exclusive defendant. *Osborn v. Haley*, 549 U.S. 225, 228–30 (2007); *see also Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) ("Upon the Attorney General's certification, the tort suit automatically converts to an FTCA" action against the United States). A Director of the Civil Division's Torts Branch is one of the Department of Justice officials designated by the Attorney General to certify a federal employee's scope of employment. *See* 28 C.F.R. § 15.4(a).

A Director of the Civil Division's Torts Branch certified Ms. Habba acted within the scope of her employment as Interim United States Attorney when she made statements about Plaintiff's arrest and prosecution. *See* Exhibit A, Certification. Therefore, as to Counts Three and Four, Ms. Habba has been "dismissed from the action, and the United States is substituted as defendant" in her place. *See Osborn*, 549 U.S. at 230. Moving forward, Counts Three and Four will be "governed by the Federal Tort Claims Act (FTCA)." *Id.*

### 2. Plaintiff has Failed to Exhaust His FTCA Claims

Plaintiffs must exhaust their administrative remedies before filing FTCA claims. *See Shelton v. Bledsoe*, 775 F.3d 554, 569 (3d Cir. 2015) (explaining that

9

exhaustion is jurisdictional and cannot be waived). Exhaustion requires the plaintiff to present their complaint to the appropriate agency and then file their claim either (1) within six months of agency denial, or (2) after six months of agency inaction. *See Pascale v. United States*, 998 F.2d 186, 188–89 (3d Cir. 1993). Plaintiffs carry the burden of proof to show the court has subject matter jurisdiction. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion."); *accord Wills v. USP Canaan,* 635 F. App'x. 5, 7–8, (3d Cir. 2015).

Failure to plead exhaustion is grounds to dismiss a complaint for lack of subject matter jurisdiction. *See Prather v. Att'y Gen. of U.S.*, 443 F. App'x. 766, 767 (3d Cir. 2011) (affirming dismissal of a plaintiff's claim because she failed to plead exhaustion); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 355 (D.N.J. 2003) ("Here, Plaintiff does not allege that he has exhausted his administrative remedies. Thus, Plaintiff cannot pursue a claim under the FTCA as he has not exhausted his administrative remedies and his claim is now time-barred."); *Biase v. Kaplan*, 852 F. Supp. 268, 283 (D.N.J. 1994) ("A complaint's failure to allege exhaustion of administrative remedies, therefore, requires dismissal of the complaint for lack of subject matter jurisdiction."). Here, the Complaint does not allege exhaustion of administrative remedies. This deficiency in the pleadings precludes the Court's exercise of subject-matter jurisdiction over Counts Three and Four.

Moreover, separate and apart from Plaintiff's failure to plead the basis for the Court's subject matter jurisdiction, Plaintiff has not, in fact, exhausted his

administrative remedies. Plaintiff filed suit in this Court on June 3, 2025. *See* Complaint, Dkt. No. 1. But Plaintiff did not file an administrative tort claim with the Department of Justice until June 12, 2025, and the claim lacked proper support in any event. *See* Exhibit B, Declaration of Elijah F. Jenkins. Plaintiffs cannot exhaust their administrative remedies *after* filing their complaint. *McNeil v. United States*, 508 U.S. 106, 110–13 (1993); *accord Wilson v. City of Cherry Hill*, No. 10-3866, 2011 WL 3651274, at *5–6 (D.N.J. Aug. 18, 2011).[4] Therefore, the Court should dismiss Counts Three and Four for lack of subject-matter jurisdiction.

### 3. Plaintiff's FTCA Claims are Barred by Sovereign Immunity

The Court would still lack subject matter jurisdiction over Counts Three and Four even if the Plaintiff had exhausted his administrative remedies. The United States has sovereign immunity from lawsuits except where it waives this immunity. *See White-Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010). The FTCA is a limited waiver of sovereign immunity. *See id.* The FTCA retains the United States' immunity from claims arising from libel and slander. 28 U.S.C.A. § 2680(h). Section 2680(h) bars claims based on the conduct the tort "arises from" rather than the label of the cause of action in the complaint. *United States v. Shearer*, 473 U.S. 52, 55 (1985) ("No semantical recasting of events can alter the fact that the battery was the immediate cause of Private Shearer's death and, consequently, the basis of

---

[4] Plaintiff recently filed a revised administrative tort claim with the federal government. Regardless of whether that claim now has proper support it cannot satisfy exhaustion here because (1) the requirements of 28 U.S.C. § 2675(a) have not been met and (2) Plaintiff cannot exhaust prior to the filing of the complaint. *McNeil*, 508 U.S. at 110–13.

11

respondent's claim."); *accord Filippatos v. United States*, No. 2:24-CV-11080, 2025 WL 3765407, at *3 n.9 (D.N.J. Dec. 30, 2025). FTCA claims "arise from" the alleged conduct that harmed the plaintiff. *See id.* (holding the plaintiff's claim was barred by § 2680(h) because the ultimate cause of her son's death was battery).

Defamation claims are categorically barred by the FTCA because they arise from false statements. *See Brumfield v. Sanders,* 232 F.3d 376, 382 (3d Cir. 2000) ("Claims 'arising out of . . . libel, slander, misrepresentation [or] deceit' are excepted from the United States's general waiver of sovereign immunity. 28 U.S.C. § 2680(h). Thus, defamation suits against the United States are prohibited."). The United States has retained sovereign immunity from Count Three, a defamation claim. Therefore, the Court must dismiss it for lack of subject matter jurisdiction.

Count Four is essentially a second defamation claim. *See Herman v. Muhammad*, 480 N.J. Super. 480, 494 (App. Div. 2024) (quoting *Swan v. Boardwalk Regency Corp.*, 969 A.2d 1145 (App. Div. 2009)) ("Simply put, false light invasion of privacy is 'essentially [a claim] of defamation.'"). Count Four alleges Ms. Habba made the same "false and defamatory statements" described in Count Three. *See* SAC ¶¶ 71–81. Torts arising from libel and slander are still barred by the FTCA when brought as an invasion of privacy claim. *See Borawski v. Henderson,* 265 F.Supp.2d 475, 483 –84 (D.N.J. 2003) ("Because the FTCA precludes claims 'arising out of' defamation and slander, the invasion-of-privacy and intentional-infliction-of-emotional-distress claims also must fail."). The United States is therefore also

12

protected by sovereign immunity from Count Four so it must be dismissed for lack of subject matter jurisdiction.

### B. A *Bivens* Remedy is Not Available

This Court should not imply a *Bivens* remedy for Plaintiff's Fourth Amendment malicious prosecution and false arrest claims. The Supreme Court has only recognized a *Bivens*-type remedy in three contexts: (1) *Bivens* itself, involving a Fourth Amendment claim against drug enforcement agents for a warrantless search and seizure in a person's home; (2) *Davis v. Passman*, 442 U.S. 228 (1979), involving a Fifth Amendment equal protection claim against a congressman for gender discrimination; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), involving an Eighth Amendment claim for failing to treat an inmate's asthma resulting in his death. *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). "Since [*Carlson*], however, it has repeatedly refused to extend the *Bivens* remedy to any other amendment, context, or category of defendant. Instead, it has clearly communicated that *Bivens* is a 'disfavored judicial activity.'" *Xi v. Haugen*, 68 F.4th 824, 832 (3d Cir. 2023); *accord Egbert v. Boule*, 596 U.S. 482, 502 (2022) ("[W]e have indicated that if we were called to decide *Bivens* today, we would decline to discover any implied causes of action in the Constitution."). Reflecting this "disfavored" status, the Court has established an exacting analysis to determine whether a given *Bivens* claim may proceed.

First, a court must determine whether a case presents a new context. A case presents a new context if "is it 'meaningfully' different from" *Bivens*, *Davis*, or *Carlson*. *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 139). This is a "broad" inquiry, *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020), that is "easily satisfied." *Abbasi*,

13

582 U.S. at 149; *accord id.* at 147 ("[E]ven a modest extension is still an extension."). Which is why the Third Circuit has instructed that "unless a case is indistinguishable from *Bivens, Davis,* or *Carlson,* a damages remedy may be created by Congress, but not by the courts." *Fisher v. Hollingsworth,* 115 F.4th 197, 205 (3d Cir. 2024). "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez,* 589 U.S. at 102. Indeed, it does not matter how many similarities a case may have to a case within the original *Bivens* trilogy. Rather, the new context inquiry asks whether there is even a single meaningful difference. *Abbasi,* 582 U.S. at 139 ("If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new."); *Ahmed v. Weyker,* 984 F.3d 564, 570 (8th Cir. 2020) ("When one or more meaningful differences exist, it is not enough to identify a few similarities.").

Second, a court must look to whether there are any "'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert,* 596 U.S. at 492 (quoting *Abbasi,* 582 U.S. at 136). This is not a high bar. A special factor need only be "*any* rational reason (even one) to think that Congress is better suited" to create a damages remedy. *Egbert,* 596 U.S. at 492 (quoting *Abbasi,* 582 U.S. at 136). Thus, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Egbert,* 596 U.S. at 486.

14

While described in two steps, the new context and special factors inquiries are not wholly distinct and often overlap. For example, "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.'" *Egbert*, 596 U.S. at 492 (quoting *Abbasi*, 582 U.S. at 140); *accord Muniz v. United States*, 149 F.4th 256, 264 (3d Cir. 2025). And the "newness" of a new context can require dismissal. *Fisher*, 115 F.4th at 205. This overlap stems from the fact that the whole *Bivens* inquiry is rooted in "separation-of-powers principles." *Abbasi*, 582 U.S. at 135. Thus, the two "steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.

### 1. Plaintiff's Claims Present a New Context

Plaintiff's constitutional claims (Counts One and Two) plainly present a new *Bivens* context. *See Xi*, 68 F.4th at 834 ("*Egbert* tells us that 'almost parallel circumstances' are not enough, and here, distinctions abound."). There are a multitude of meaningful differences between this case and *Bivens*, the only decision of the original *Bivens* trio even dealing with the Fourth Amendment.

Indeed, most of the non-exhaustive list of "meaningful differences" given in *Abbasi* are present here. 582 U.S. at 139–40. This case is against a different category of defendants than the narcotics agent defendants in *Bivens*: a United States Attorney and an HSI Special Agent in Charge. *See Barry v. Anderson*, No. 22-3098, 2023 WL 8449246, at *3 (3d Cir. Dec. 6, 2023) (holding that ICE agents are a new category of defendant under *Bivens*). Both Patel and Habba operate under a different legal mandate than the agents in *Bivens*. *See* 28 U.S.C. §§ 541–550 (United States

15

Attorneys); *Sheikh v. U.S. Dep't of Homeland Sec.*, 106 F.4th 918, 925 (9th Cir. 2024) (holding that HSI agents act under a different legal mandate than the agents in *Bivens*). Defendants—who are high-level supervisors—are also a different rank than the defendants in *Bivens. See Henry v. Essex Cnty.*, 113 F.4th 355, 362 n.5 (3d Cir. 2024) ("They are also in a new context because they target supervisory officials rather than line officers."). Plaintiff's claims involve a "different breed of law enforcement misconduct" and thus different risk of disruptive intrusion by the Judiciary into the functioning of the Executive branch. *Xi*, 68 F.4th at 834 (holding that a claim alleging "federal agents made false statements and material omissions of exculpatory evidence that led the Government to investigate, arrest, and prosecute him" presented a new context). "[T]he mechanism of injury, and the kinds of proof those injuries would require" are also meaningfully distinct. *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (holding that "indirect" injuries caused by police lies present a different mechanism of injury than were present in *Bivens*). This case takes place within the context of a Congressional inspection of a federal immigration facility, rather than a narcotics arrest at a personal residence. *Bivens*, 403 U.S. at 389. And, as detailed below, this case implicates multiple special factors not considered in *Bivens* itself. *See infra* at 16–20; *Kalu v. Spaulding*, 113 F.4th 311, 327 (3d Cir. 2024) (holding that the presence of an alternative process and congressional action not previously considered meant that a case arose in a new context).

Without question, this case presents a new *Bivens* context.

16

### 2.  Numerous Special Factors Counsel Hesitation Here

There are many rational reasons for the Court to hesitate before implying a damages remedy for Plaintiff's claims, including the presence of multiple alternative remedial remedies. *Egbert*, 596 U.S. at 493 ("If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action."); *Muniz*, 149 F.4th at 265 ("At bottom, Muniz's *Bivens* claim fails because an alternative remedy existed and was made available to him.").

Congress has created at least two remedies for those unjustly prosecuted or convicted for offenses against the United States. The Third Circuit has held that two of these—28 U.S.C. § 1495 and the Hyde Amendment, 18 U.S.C. § 3006A—are special factors that counsel hesitation before extending a *Bivens* remedy. *Xi*, 68 F.4th at 837; *accord Farah*, 926 F.3d at 501. Both are implicated by Plaintiff's claims and are "independently" sufficient to bar an extension of *Bivens* here.

But other processes exist as well, including the criminal process itself and Federal Rules of Criminal Procedure. These are not merely court rules; they are statutorily enacted by Congress, 28 U.S.C. §§ 2073–74, and "have the force of law," *Deaver v. Seymour*, 822 F.2d 66, 70 n.9 (D.C. Cir. 1987) ("The Federal Rules of Criminal Procedure are a comprehensive set of rules of pleading, practice, and procedure for federal, *see* 28 U.S.C. §§ 2073–74, criminal prosecutions.").

Plaintiff also could have reported the alleged misconduct to the Department of Homeland Security or Department of Justice. Both agencies have internal grievance processes and offices to investigate alleged civil rights abuses. *See Hotline*, U.S. DEP'T

HOMELAND SEC. OFF. INSPECTOR GEN., https://www.oig.dhs.gov/hotline (last visited June 8, 2026); *Delaney Hall Detention Facility*, U.S. IMMIGR. & CUSTOMS ENF'T (Feb. 23, 2026), https://www.ice.gov/detain/detention-facilities/delaney-hall-detention-facility (listing avenues for making complaints under "Feedback or Complaints" tab); 5 U.S.C. § 417(f)(1)–(2) (providing for a senior official within the Office to receive and review complaints about and to investigate alleged civil rights abuses); 6 U.S.C. § 345(a)(1), (4), (6) (requiring Officer for Civil Rights and Civil Liberties to investigate alleged misconduct); *Violation of Civil Rights or Civil Liberties Complaint*, U.S. DEP'T JUST. OFF. INSPECTOR GEN., https://oig.justice.gov/hotline/violation-of-civil-rights-liberties (last visited June 8, 2026); 5 U.S.C. § 413 (Review of Civil Rights Complaints by the Department of Justice). Moreover, by regulation, U.S. Immigration and Customs Enforcement "must investigate '[a]lleged violations of the standards of enforcement activities' and accept grievances from '[a]ny persons wishing to lodge a complaint.'" *Egbert*, 596 U.S. at 497 (quoting 8 C.F.R. §§ 287.10(a) – (b)). The existence of such grievances processes is sufficient to foreclose the extension of a *Bivens* remedy. *Id.* at 498 (holding "[s]o long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy."); *see also Pettibone v. Russell*, 59 F.4th 449, 456 (9th Cir. 2023) (holding that the grievance procedure created in 5 U.S.C. app. 3 § 8I(f) provides an alternative remedial structure that forecloses a *Bivens* remedy).

18

Furthermore, the Court has recognized that congressional interest, when coupled with a failure to provide a damages remedy, is a special factor counselling hesitation before extending *Bivens. Abbasi*, 582 U.S. at 144. Such Congressional awareness makes it "much more difficult to believe that 'congressional inaction'" in failing to provide a damages remedy "was 'inadvertent.'" *Id.* (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988)). Congress frequently legislates in the areas of immigration and immigration enforcement but has not chosen to create a damages remedy to supplement the already existing remedies discussed above. *See supra* at 17–18. That silence should give the Court pause before it steps in to create a damages remedy.

Relatedly, the "newness" of this new context is an additional factor counselling hesitation. *Fisher*, 115 F.4th at 205. The allegations in this complaint are exceptionally unusual, with dramatic differences from the arrest that occurred in *Bivens* itself. *Abbasi*, 582 U.S. at 134 (noting that *Bivens* involved a "common and recurrent sphere of law enforcement"). Here, a high-level immigration official arrested the mayor of a major city for trespassing on the grounds of a federal immigration detention center during the course of a Congressional inspection. *See generally* SAC. Given these unusual circumstances, no court could "predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*" here. *Egbert*, 596 U.S. at 493 (quoting *Abbasi*, 582 U.S. at 136). That uncertainty alone is a special factor that forecloses relief. *Id.*

An additional "reason to pause here is the 'risk' of 'interference' with 'the executive branch's investigative function.'" *Henry*, 113 F.4th at 363 (cleaned up) (quoting *Annappareddy v. Pascale*, 996 F.3d 120, 137 (4th Cir. 2021)). *Henry* is instructive. There, the Third Circuit explained that requiring federal agents to take "claims of innocence seriously" "raises a host of policy questions," which are better decided by Congress than the courts. *Henry*, 113 F.4th at 363; *see also Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2019) (declining to create a *Bivens* remedy which "would invite a wide-ranging inquiry into the evidence available to investigators, prosecutors, and the grand jury"). So too, here, Plaintiff complains that he told Patel he had been given permission to enter Delany Hall, a claim which Patel allegedly should have credited. SAC ¶¶ 22, 40, 56, 65. *Henry* bars the extension of *Bivens* into this context.

Plaintiff's complaint stems from a prosecution for trespassing at an immigration detention facility. Thus, the creation of a *Bivens* remedy here would also implicate the Executive Branch's prosecutorial and immigration regulation functions, further counselling hesitation. *See In re Sealed Case*, 829 F.2d 50, 63 (D.C. Cir. 1987) (quoting *United States v. Nixon*, 418 U.S. 683, 693 (1974)) (Williams, J., concurring and dissenting) ("The Supreme Court has long recognized that 'the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case."); *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2012) (quoting *Arar v. Ashcroft*, 585 F.3d 559, 574 (2d Cir. 2009)) ("[I]mmigration issues 'have the natural

20

tendency to affect diplomacy, foreign policy, and the security of the nation,' which further 'counsels hesitation' in extending *Bivens*.").

### 3. The *Bivens* Claims Against the United States Cannot Proceed

The Second Amended Complaint adds *Bivens* claims against Habba and Patel in their "official capacities." SAC at 1, 13, 15. "Official-capacity suits" are "'only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55 (1978)). Here, Habba and Patel were agents of the federal agencies for which they worked. But the Supreme Court has categorically barred any such *Bivens* claims against federal agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *Albert v. Yost*, 431 F. App'x 76, 81 (3d Cir. 2011) ("A *Bivens* claim can be maintained only against individual federal officers, not against a federal entity."). The *Bivens* claims against Habba and Patel in their "official capacities" must be dismissed.

\* \* \*

In sum, this Court has more than ample reason to "pause" and thus should not create a novel *Bivens* cause of action in this case. The Court should dismiss Counts One and Two of the complaint.

### C. The Defendants are Entitled to Qualified Immunity

If the Court extends a *Bivens* remedy in this case, which it should not, then the Court should still dismiss the *Bivens* claims based on qualified immunity. Qualified immunity protects public officials "from liability for civil damages insofar as their

21

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001). Accordingly, courts must resolve "immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity is "not a mere defense from liability; 'it is an entitlement not to stand trial or face the other burdens of litigation.'" *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To overcome qualified immunity, a plaintiff must "plead[] facts showing" both: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow,* 457 U.S. at 818).

For purposes of qualified immunity, a right is clearly established if, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Saucier*, 533 U.S. at 201; *accord Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021). "As the Supreme Court has stressed, that framing is especially important for Fourth Amendment claims because probable cause depends heavily on each case's facts." *Urda v. Sokso*, 146 F.4th 311, 314 (3d Cir. 2025). Courts "do not require a case directly on point, but existing precedent must

22

have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

Plaintiff alleges that the individual defendants violated his Fourth Amendment rights by arresting him and initiating a criminal proceeding against him for defiant trespass without probable cause. SAC ¶¶ 55, 63. Lack of probable cause is a required element for both false arrest and malicious prosecution claims. *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) (malicious prosecution); *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012) (false arrest). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). "Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "Far from demanding proof of guilt beyond a reasonable doubt, '[p]robable cause exists if there is a fair probability that the person committed the crime at issue.'" *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). A person is liable under New Jersey's defiant trespass statute if he stays on a property after being told to leave. N.J.S.A. § 2C:18-3 ("A person commits a petty disorderly persons offense if, knowing that he is not licensed or privileged to do so, he enters *or remains* in any place as to which notice against trespass is given by … [a]ctual communication to the actor.") (emphasis added); *see* 18 U.S.C. § 13 (adopting state

23

criminal laws for areas within Federal jurisdiction). Defendants had probable cause to believe Plaintiff had committed defiant trespass at the time of the arrest.

Patel ordered Plaintiff to leave the Delany Hall property. SAC ¶ 22. Plaintiff did not do so for five minutes, until Patel "threatened to arrest" him. *Id.* ¶ 24. Even if Plaintiff eventually complied, his initial failure to do so meant there was probable cause to believe he was trespassing. *Cf. State v. Dargon*, 165 N.J. Super. 500, 503–04 (App. Div. 1978) ("[T]heir deliberate and persistent refusal to leave pursuant to the several requests rendered them wilful trespassers within the interdiction of the foregoing statute."). Whether Plaintiff said he was initially invited onto the property is irrelevant: once he was asked to leave, he was required to do so. *Cf. id.* ("Although defendants entered the premises with … permission … the hospital authorities had the right to ask them to leave the building thereafter."). And Patel was not required to credit Plaintiff's statement in any event. *Dempsey*, 834 F.3d at 467 (noting that the probable cause standard does not require officers to make correct credibility determinations); *Kendig v. Stolar*, 173 F.4th 466, 477 (3d Cir. 2026) ("An officer is not required to evaluate the merits of every potential affirmative defense before filing charges or making an arrest.").

Because it appeared that Plaintiff had broken the law, the individual defendants had probable cause to arrest and initiate a prosecution against him. Relatedly, the complaint does not evidence any malice on the part of the individual defendants toward Plaintiff. *Thompson v. Clark*, 596 U.S. 36, 44 n.3 (2022) (leaving open the possibility that malice is a required element of a Fourth Amendment

24

malicious prosecution claim). At the very least, the law was not clearly established that the decision to arrest and initiate a prosecution against Plaintiff under these circumstances violated the Fourth Amendment. *See Urda*, 146 F.4th at 314 (noting that the law was not clearly established where "an assistant district attorney had reviewed the charges and not only found them justified but told [the officer] to add another one.").

Therefore, the Court should dismiss Counts One and Two of the complaint.

**D. United States Attorney Habba is Entitled to Absolute Immunity**

In *Imbler v. Pachtman*, the Supreme Court held that "in initiating a prosecution and in presenting the [government's] case, the prosecutor is immune from a civil suit for damages . . . ." 424 U.S. 409, 431 (1976). Plaintiff alleges that United States Attorney Habba "orchestrat[ed]" and endorsed the prosecution of Plaintiff. SAC ¶ 66; *see also id.* ¶ 63 ("Defendants initiated a criminal prosecution against Plaintiff…"). To the extent Plaintiff is suing Habba for the decision to prosecute him, she is entitled to absolute immunity and Plaintiff's claim must be dismissed.

**E. The City's Claims Fail as a Matter of Law**

By bringing this suit "in [the Mayor's] official . . . capacit[y]," the Second Amended Complaint purports to add the City of Newark or the Mayor's office as a plaintiff in this action. SAC at 1; *Graham*, 473 U.S. at 165. But it is not even clear that Plaintiff's attorney has the ability to represent the City and its interests before this Court or that an appearance by the City has been properly made. *See* NEWARK, N.J., CODE § 2:6-2.2, Duties of Corporation Counsel ("The Corporation Counsel shall be the chief law officer of the City and the attorney of record in all proceedings

25

wherein the City or any of its officers, boards, bodies or commissions, by reason of any suits growing out of their official position, shall be a party."). Moreover, any and all claims brought by the City in this suit would fail as a matter of law. The Complaint does not allege the City exhausted its administrative remedies, and any FTCA claims would be barred by sovereign immunity in any event. *See supra* at 9–12. *Bivens* never has been and should not be extended to any claims brought by a local municipality. And the allegations do not state a violation of any clearly established constitutional right of the City. In sum, all claims brought by the Mayor in his official capacity— that is, by the City of Newark or the mayor's office—must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint under Rules 12(b)(1) and 12(b)(6).

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PAUL E. WERNER
Assistant Director, Torts Branch

REGINALD M. SKINNER
Senior Trial Counsel

By:    */s/ Paul C. Quast*
PAUL C. QUAST
Senior Trial Attorney

Dated: June 9, 2026                    *Attorneys for Defendants*

26