## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

————————————————— |    Hon. Brian R. Martinotti

MAYOR RAS BARAKA,                     |

    Plaintiff,                                    |

    v.                                               |    Case No. 2:25-cv-06846-RM-LDW

ALINA HABBA, et al.,                       |

    Defendants.                                |

————————————————— |

## BRIEF OF LAWYERS DEFENDING AMERICAN DEMOCRACY AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF BARAKA AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Robert Steinbaum (NJ Bar # 000741980)
135 Norwood Ave.
Upper Montclair, NJ 07043
(973) 223-5629
rssteinbaum@gmail.com

Counsel for Amicus Curiae

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................III

RULE 7.1 CORPORATE DISCLOSURE STATEMENT ..................................1

INTEREST OF AMICUS CURIAE.......................................................1

SUMMARY OF ARGUMENT.............................................................1

ARGUMENT.............................................................................3

**I. Defendants' Actions are Part of a Pattern of Trump Administration-Directed Weaponizing the Criminal Justice System that Has Eliminated the Basis for the Presumption of Regularity..................................................3**

A. The Trump Administrations Have Repeatedly Targeted Their Political Opponents.........................................................................3

B. The Trump Administration Has Institutionalized Weaponization of the Criminal Justice System against Political Opponents ...........................5

C. The Trump Administrations Have Repeatedly Used the Criminal Justice System to Shield Political and/or Personal Allies and Supporters.................6

D. The Baraka Case Exemplifies This Pattern of Targeting Opponents...........7

   1. Public Partisan Statements by Defendant Habba.........................8

   2. Selective Targeting of Democratic Officials by Defendant Habba and then U.S. Deputy Attorney General Todd Blanche .................................8

   3. Orchestrated Arrest, Prosecution and Prejudicial Publicity.............9

   4. Swift Dismissal of Charges............................................10

E. The Trump Administrations' Pattern of Weaponization Has Eliminated Defendant Habba's "Presumption of Regularity"...............................10

**II. The Challenged Conduct Undermines Law Enforcement Impartiality and the Rule of Law in Ways Characteristic of Authoritarian Regimes.................12**

A. Police and Prosecutors Must Exercise Their Great Power with Impartiality..12

B. Partisan Arrests and Prosecutions Erode Democracy.......................15

   1.  Threat to the Rule of Law. ......................................15

   2.  Deterring Political Participation.................................15

   3.  Erosion of Public Trust Required for Effective Law Enforcement ..........16

C. The Conduct Resembles Authoritarian Practices ...........................17

D. Judicial Oversight Is Essential...........................................18

**CONCLUSION**......................................................................................................**19**

**CERTIFICATE OF SERVICE** ........................................................................**20**

## TABLE OF AUTHORITIES

### Cases

*Bd. of Governors of the Fed. Rsrv. Sys. v. United States,* (D.D.C. 2026). ................4

*Berger v. United States*, 295 U.S. 78 (1935). ........................................................14

*Crawford-El v. Britton*, 523 U.S. 547 (1998) ........................................................17

*Ewing v. Mytinger & Casselberry*, 339 U.S. 594 (1950). .......................................13

*Fed. Educ. Ass'n v. Donald Trump,* (D. D.C. 2025). ..............................................11

*Hartman v. Moore*, 547 U.S. 250 (2006)..................................................................16

*Illinois v. Gates*, 462 U.S. 213 (1983). ...................................................................17

*Lozman v. City of Riviera Beach, Fla.*, 585 U.S. 87 (2018)....................................13

*Marbury v. Madison*, 5 U.S. 137 (1803)...................................................................16

*Reichle v. Howards*, 566 U.S. 658 (2012). ..............................................................11

*United States v. Armstrong*, 517 U.S. 456 (1996) ...............................................2, 10

*United States v. Chemical Foundation, Inc.*, 272 U.S. 1 (1926) .............................11

*United States v. Kilmer Armando Abrego Garcia,* (M.D. Tenn. 2026)...................12

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952).............................16

### Other Authorities

Scott L. Cummings, *The Autocratic Legal Playbook*, UCLA L. Rev. (2025) ........17

Bruce A. Green & Fred C. Zacharias, *Prosecutorial Neutrality*, 2004 Wis. L. Rev. 837 (2004)...................................................................................................16

Peter Krekó & Zsolt Enyedi, *Explaining Eastern Europe: Orbán's Laboratory of Illiberalism*, 29 J. Democracy 3 (2018)..............................................................17

Steven Levitsky & Lucan Way, *The Rise of Competitive Authoritarianism*, 13 J. Democracy 61 (2002) ...................................................................................17

Press Release, U.S. Dep't of Just., *Justice Department Announces Formation of Strike Force to Assess Evidence Publicized by ODNI*  (2025)...............................6

Press Statement, U.S. Dep't of State, *Venezuela: Political Prisoners Should be Released Immediately* (2017). ............................................................................17

Kim Lane Scheppele, *Autocratic Legalism*, 85 U. Chi. L. Rev. 545 (2018)...........17

## RULE 7.1 CORPORATE DISCLOSURE STATEMENT

Lawyers Defending American Democracy (LDAD) is a non-partisan 501(c)(3) corporation. It has no parent corporation and no publicly held corporation has 10% or more ownership of LDAD.

## INTEREST OF AMICUS CURIAE[1]

Lawyers Defending American Democracy is a nonpartisan organization of attorneys, including former judges, prosecutors, government lawyers and law professors, committed to safeguarding the rule of law and democratic institutions. LDAD frequently files amicus briefs where the impartial administration of justice is at risk.

This case raises fundamental concerns about whether arrest and prosecutorial authority was used to punish a political opponent. Because the integrity of the arrest and prosecutorial functions are indispensable to democracy, LDAD has a strong interest in supporting Plaintiff Baraka's claims and in urging this Court to ensure that arrest and prosecutorial powers are exercised free of partisan influence.

## SUMMARY OF ARGUMENT

This case raises serious allegations that an interim federal prosecutor and a

---

[1] No party's counsel authored this brief in whole or in part. No party or a party's counsel contributed money that was intended to fund preparing or submitting this brief. No person other than the amicus curiae, its members, or its counsel contributed money that was intended to fund preparing or submitting this brief.

federal law enforcement official orchestrated the false arrest, malicious prosecution, public defamation, and placing in a false light of Newark Mayor Ras Baraka after his lawful visit to an immigrant detention facility. The circumstances surrounding Mayor Baraka's arrest and prosecution raise profound concerns about the misuse of federal law enforcement power for partisan ends.

Prosecutors normally enjoy broad judicial deference, a "presumption of regularity," in exercising their core executive functions. *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996). However, defendants' Habba's and Patel's alleged conduct is part of a far-reaching, well-documented, pattern of the Trump Administration's weaponizing federal law enforcement to target political opponents while shielding political allies. The sheer quantity, seriousness, willfulness, and overtness of such law enforcement abuses eliminates the basis for giving the presumption of regularity here. This campaign against Mayor Baraka strikes at the core of law enforcement impartiality and the rule of law and bears troubling resemblance to practices of authoritarian regimes.

While defendants make a number of arguments why Bivens should not be applied here, this amicus brief focuses on rebutting the implicit premise of defendants' argument at page 20 of their brief that allowing Bivens would interfere with the executive branch's important investigative and prosecutorial functions. Amicus believes that the underlying premise for the normal deference that the

2

judiciary gives to the executive branch's performance of its investigative and prosecutorial functions is that the executive is enforcing the law impartially. When the challenged conduct is part of a wide-spread practice of vindictive and/or politically or personally-motivated investigations and prosecutions, the basis for this deference disappears.

## ARGUMENT

### I. Defendants' Actions are Part of a Pattern of Trump Administration-Directed Weaponizing the Criminal Justice System that Has Eliminated the Basis for the Presumption of Regularity

The allegations in this case are not isolated. They reflect a broader and well-documented pattern of using investigative, arrest and prosecutorial power to punish perceived political and/or personal opponents and protect political and/or personal allies. This pattern of misconduct eliminates the basis for the presumption that the Government's actions are done in good faith.

#### A. The Trump Administrations Have Repeatedly Targeted Their Political Opponents

From the 2016 campaign through his two presidencies, Donald Trump and his administrations have repeatedly threatened to use, and have used, federal law enforcement to investigate, prosecute, or incarcerate political rivals. Examples include:

- Campaigned in 2016 on promises to prosecute Hillary Clinton, stating during a presidential debate that if he were elected, "you would be in jail."

3

- Demanded that then Attorney General Pamela Bondi prosecute his former FBI Director James Comey, who had refused to pledge loyalty to Trump, New York Attorney General Letitia James, who had brought a successful state civil fraud case against Trump and others at the Trump Organization, and Senator Adam Schiff, who had been the manager of the first Trump impeachment trial.

- After his appointed U.S. Attorney for the Eastern District of Virginia, Erik S. Siebert, concluded that there was insufficient evidence to prosecute Comey and James, Trump fired Siebert, replacing him with Trump's former personal lawyer, Lindsey Halligan, who then initiated prosecutions of Comey and James despite her staff advising her that there was insufficient evidence.

- After the court dismissed the James and Comey prosecutions, Halligan failed to obtain from two grand juries renewed indictments against James.

- Chief Judge of the U.S. District Court for the District of Columbia, James E. Boasberg, quashed grand jury subpoenas on the Federal Reserve because their dominant purpose was "to pressure and harass [Fed Chair Jerome H.] Powell."[2]

- The U.S. Attorney for D.C., Jeanine Pirro, sought sedition indictments against six Democratic Congresspersons, but the grand jury refused to indict.

---

[2] *Board of Governors of the Federal Reserve System v. United States of America,* No. 26-12, Slip Op. at 2 (D.D.C. Mar. 13, 2026).

- On April 21, 2026, indicted the Southern Poverty Law Center for secretly infiltrating the Ku Klux Klan, Aryan Nation and National Alliance.[3]

- On June 17, 2026, Chief Judge Patrick J Schiltz quashed DOJ grand jury Indictment, United States v. Southern Poverty Law Center (2026), subpoenas on the Democratic Minnesota Governor, Minneapolis Mayor, St. Paul Mayor, Minnesota Attorney General and two county boards of commissioners, finding that "these subpoenas are not issued to investigate, but to harass, coerce, and retaliate."[4]

These actions, going beyond ordering investigations to dictating their outcome, exemplify an improper use of investigatory and prosecutorial discretion as a political and/or personal weapon.

## B. The Trump Administration Has Institutionalized Weaponization of the Criminal Justice System against Political Opponents

In addition to conducting ad hoc politically-motivated investigations and prosecutions, the Trump Administrations has institutionalized such actions:

- Established a DOJ "Weaponization Working Group" tasked with investigating prosecutors and FBI agents who investigated or prosecuted

---

[3] Indictment, *United States v. Southern Poverty Law Center*, Docket Number, (M.D. Ala. Apr. 21, 2026), https://storage.courtlistener.com/recap/gov.uscourts.almd.90264/gov.uscourts.almd.90264.1.0.pdf.

[4] *In re Grand Jury Subpoenas*, 0:26-mc-00043-PJS, slip op. at 25 (D.Minn. June 17, 2026).

5

Donald Trump[5];

- Appointed partisan loyalists, such as Ed Martin, to lead investigative efforts with the express purpose of charging or publicly shaming critics[6];

- Ordered the creation of special strike forces targeting perceived opponents in government, politics and civil society.[7]

By formalizing the use of prosecutorial power for retaliation and against adversaries, the Trump Administrations has eroded the independence of the Department of Justice and further undermined public trust in the rule of law.

### C. The Trump Administrations Have Repeatedly Used the Criminal Justice System to Shield Political and/or Personal Allies and Supporters

As a corollary to targeting perceived opponents, President Trump and former Attorney General Bondi have repeatedly intervened to protect allies from accountability:

- Asked then-FBI Director James Comey to drop the investigation of National

---

[5] Memorandum from Attorney General, *Restoring the Integrity and Credibility of the Department of Justice,* (Feb. 5, 2025), https://www.justice.gov/ag/media/1388506/dl?inline.

[6] Katherine Faulders, *Ed Martin, Trump's DOJ Pardon Attorney, Says He'll Review Biden's Outgoing Pardons*, ABC NEWS (May 13, 2025), https://abcnews.go.com/Politics/ed-martin-trumps-doj-pardon-attorney-hell-review/story?id=121771837.

[7] Press Release, U.S. Dep't of Just., *Justice Department Announces Formation of Strike Force to Assess Evidence Publicized by ODNI* (July 23, 2025), https://www.justice.gov/opa/pr/justice-department-announces-formation-strike-force-assess-evidence-publicized-odni.

Security Adviser Michael Flynn and later directing DOJ to dismiss Flynn's prosecution despite his guilty pleas.

- Commuted or pardoned loyal associates, including Roger Stone.

- Ordered the release of all approximately 1,500 January 6 insurrectionists, including those who were convicted of assaulting police officers.

- Directed DOJ to dismiss the prosecutions of New York City Mayor Eric Adams in exchange for immigrant deportation cooperation.

- Transferrer Ghislaine Maxwell to lower-security confinement after she made favorable statements regarding Donald Trump's relationship with Jeffrey Epstein.

- Ended the investigation of his "border czar" Thomas Homan for accepting $50,000 in cash in exchange for Homan's indicating he could help win government contracts.

- Failed to investigate the ICE officer who killed U.S. citizen Renee Good.[8]

This selective protection further demonstrates the partisan misuse of prosecutorial and pardon authority.

### D. The Baraka Case Exemplifies This Pattern of Targeting Opponents

---

[8] Alana Durkin Richer & Eric Tucker, *Justice Department sees no basis for civil rights probe in Minnesota,* AP, Jan. 13, 2026, https://apnews.com/article/justice-department-resignations-renee-good-f456dc01c7d72e15662016193b2e383e?utm_source=copilot.com.

The allegations surrounding Mayor Ras Baraka's arrest and prosecution reflect precisely the kind of politically-motivated law enforcement that has become a hallmark of the Trump Administrations. Three features of this case are especially telling.

**1. Public Partisan Statements by Defendant Habba**

Shortly before assuming office as interim U.S. Attorney for New Jersey, Defendant Alina Habba, Donald Trump's former personal lawyer, publicly criticized New Jersey Democratic leaders, including Senator Cory Booker and Governor Phil Murphy, declaring that they had "failed the State of New Jersey." She further stated, "We could turn New Jersey red . . . Hopefully, while I'm there I can help that cause."[9] These statements suggest an intent to use prosecutorial power in service of partisan political goals rather than impartial law enforcement.

**2. Selective Targeting of Democratic Officials by Defendant Habba and then-U.S. Deputy Attorney General Todd Blanche**

When she became the U.S. Attorney, Defendant Habba reportedly had a list of state Democrats she aimed to investigate, including Governor Phil Murphy, Senator Cory Booker and Plaintiff Baraka.[10] Prosecutor Habba soon announced an

---

[9] Matt Friedman, *The Risks of Habba*, Politico (March 31, 2025), https://www.politico.com/newsletters/new-jersey-playbook/2025/03/31/the-risks-of-habba-00259965.

[10] Jonathan Blitzer, *The Congresswoman Criminalized for Visiting ICE Detainees*, THE NEW YORKER, Jan. 19, 2026, https://www.newyorker.com/magazine/

8

investigation of Governor Murphy and then-Attorney General Matthew Platkin for allegedly interfering with federal deportation policies. Moreover, evidence indicates that the order to arrest Democratic Mayor Baraka came from Trump's former personal lawyer, Deputy Attorney General Todd Blanche.[11] Normally, the number two official in the Justice Department does not become involved in arrests, particularly for minor offenses like trespass. The sequence of events, the central roles of two of Trump's former personal lawyers, and the political affiliation of the targeted officials, suggests selective enforcement driven by partisan considerations rather than neutral prosecutorial judgment.

### 3. Orchestrated Arrest, Prosecution and Prejudicial Publicity

The manner of Mayor Baraka's arrest underscores the political nature of the prosecution. The arrest involved approximately twenty agents, handcuffing, a mug shot and fingerprinting on two occasions, detention for more than five hours, and a pretrial services interview—all for a minor trespassing allegation. Furthermore, both U.S. Attorney Habba and Department of Homeland Security Official Tricia McLaughlin made extensive public statements condemning Mayor Baraka regarding the arrest. The scale and publicity of this operation appear calculated to create a

---

2026/01/26/lamonica-mciver-congress-ice-jail-visit-felony-charges?_sp=952604cf-c51a-424d-8b13-45d269a90f75.1769467341400.

[11] N.J.com, *Newly released bodycam footage reveals who really ordered the arrest of Newark's mayor,* (Sept. 30, 2025), https://www.youtube.com/watch?v=iyVjV5WmLjk.

spectacle and humiliate a political opponent, not to vindicate legitimate law enforcement interests.

### 4. Swift Dismissal of Charges

Finally, the rapid dismissal of charges against Mayor Baraka strongly suggests that the prosecution lacked merit and was initiated for political retaliation rather than legitimate law enforcement. When prosecutors bring meritless charges that are quickly abandoned, the real injury lies in the damage to reputation and the chilling effect on political dissent.

Taken together, these facts place the Baraka arrest and prosecution squarely within the broader pattern of weaponizing law enforcement power against political opponents while shielding allies.

### E. The Trump Administrations' Pattern of Weaponization Has Eliminated Defendant Habba's "Presumption of Regularity"

The "presumption of regularity" is a judicially-created doctrine that instructs courts to presume, unless there is clear evidence to the contrary, that public officials have "properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (selective prosecution claim). That presumption applies to prosecutions, but not arrests. *Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088, 2096 (2012).

"[C]lear evidence to the contrary," overcomes the presumption of regularity. *Armstrong*, 517 U.S. at 465, *quoting United States v. Chemical Foundation, Inc.*,

10

272 U.S. 1, 14-15 (1926). When prosecutors abuse their power to punish the president's political enemies and quash dissent, the presumption should not apply. Indeed, Judge Paul L. Friedman cautioned in an August 2025 opinion:

> Generations of presidential administrations and public officials have validated this underlying premise of the presumption of regularity: their actions writ large have raised little question that they act 'in obedience to [their] duty.' Over the last six months, however, courts have seen instance after instance of departures from this tradition.
> *       *       *       *       *       *
>  … **In just six months, the President of the United States may have forfeited the right to such a presumption of regularity**. (emphasis added).
> *Federal Education Association, et al. v. Donald Trump, et al.,* No. 25-1362, slip op. at 21, 25 (D. D.C. Aug. 14, 2025).

A prime example of an irregular prosecution by the Trump Administration was that of Abrego Garcia. A federal district court dismissed his indictment on the grounds of vindictive prosecution. *United States of America v. Kilmer Armando Abrego Garcia,* No. 3:25-cr-00115, slip op. at 12-13 (M.D. Tenn. May 22, 2026).

The Trump Administrations' weaponization of the criminal justice system has been part of a larger pattern of irregular conduct noted by numerous federal judges. A November 20, 2025, study by Just Security noted that courts have found arbitrary and capricious action by the Trump administration in 68 cases.[12] In particular,

---

[12] Ryan Goodman, Siven Watt, Audrey Balliette, Margaret Lin, Michael Pusic and Jeremy Venook, *The "Presumption of Regularity" in Trump Administration Litigation,* Just Security (Nov. 20, 2025), https://www.justsecurity.org/120547/presumption-regularity-trump-administration-litigation/.

11

numerous courts have found the government to have acted with retaliatory and pretextual motives. This pattern of conduct has led several judges to conclude that the government has forfeited deference. As Judge Paula Xinis stated, "You have taken the presumption of regularity and you have destroyed it, in my view."[13]

The findings of Magistrate Judge Andre Espinosa regarding the *Baraka* prosecution --- that the charges against Mayor Baraka were "a worrying misstep" that was suggestive of "a failure to adequately investigate, to carefully gather facts, and to thoughtfully consider the implication" of charging the Mayor --- are supported by the evidence. Taken together with the Trump Administration's pattern of both weaponizing the criminal justice system and of improperly attempting to control independent entities, the presumption of regularity should not apply here.

## II. The Challenged Conduct Undermines Law Enforcement Impartiality and the Rule of Law in Ways Characteristic of Authoritarian Regimes

### A. Police and Prosecutors Must Exercise Their Great Power with Impartiality

The Fourth Amendment expressly protects "the right of the people to be secure in their persons … against unreasonable … seizures." Thus, "[a]n arrest deprives a person of essential liberties." *Lozman v. City of Riviera Beach, Fla.*, 585

---

[13] Alan Feuer*, Judges Openly Doubt Government as Justice Dept. Misleads and Dodges Orders,* New York Times (Aug. 4, 2025), https://www.nytimes.com/2025/08/04/us/politics/trump-justice-department-judges-courts.html.

US 87, 138 S.Ct. 1945, 1948 (2018).

Likewise, prosecutors wield extraordinary power. The impact of an indictment or information on "the reputation or liberty of a man . . . is often serious," and [t]he harm to property and business can also be incalculable." *Ewing v. Mytinger & Casselberry*, 339 U.S. 594, 599 (1950). As Supreme Court Justice Robert Jackson warned when he was serving as Attorney General, "[t]he prosecutor has more control over life, liberty, and reputation than any other person in America . . . While the prosecutor at his best is one of the most beneficent forces in our society, when he acts from malice or other base motives, he is one of the worst."[14]

That "immense power to strike at citizens . . . with all the force of government itself," *Id.*, must be exercised neutrally, not as an instrument of partisan politics. The Supreme Court has long emphasized that a United States Attorney "is the representative, not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all." *Berger v. United States*, 295 U.S. 78, 88 (1935).

In particular, the Department of Justice Manual prohibits its attorneys from being influenced by a person's "political association, activities, or beliefs" or acting "for the purpose of giving an advantage or disadvantage to any candidate or political

---

[14]  Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L. & Criminology 3 (1940).

13

party."[15]

The American Bar Association's standards likewise instruct that "[a] prosecutor should not use other improper considerations, such as partisan or political or personal considerations, in exercising prosecutorial discretion."

Unfortunately, that impartial application of the law was not met in the case at bar. Attorney General Jackson anticipated this situation in his speech to the U.S. Attorneys eighty-five years ago. He warned:

> In times of fear or hysteria political, racial, religious, social, and economic groups, often from the best of motives, cry for the scalps of individuals or groups because they do not like their views.
>
> In such situations,
>
> . . . in which the prosecutor picks some person whom he dislikes or desires to embarrass, . . . . and then looks for an offense, that the greatest danger of abuse of prosecuting power lies . . . . [T]he real crime becomes that of being unpopular with the predominant or governing group, being attached to the wrong political views . . ..[16]

Or as Stalin's secret police chief Lavrentiy Beria more succinctly stated, '[s]how me the man and I'll find you the crime."[17]

The allegation in this case—that Mayor Baraka was arrested and prosecuted

---

[15] U.S. Dep't of Just., Just. Manual § 9-27.260 (2025), https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution#9-27.260.
[16] Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L. & Criminology 3, (1940).
[17] *Lavrentiy Beria Quotes,* Quoteikon (Sept. 23, 2025 at 8:23), https://www.quoteikon.com/lavrentiy-beria-quotes.html.

in retaliation for his criticism of the Trump Administration's immigration policies—fall well outside the fundamental principle that law enforcers must be impartial.[18]

## B. Partisan Arrests and Prosecutions Erode Democracy

The use of arrest and prosecutorial power to retaliate against political dissent undermines American democracy in three critical ways:

### 1. Threat to the Rule of Law.

The rule of law requires that no one is above the law, everyone is equal under the law and that enforcement is applied evenhandedly. "The government of the United States has been emphatically termed a government of laws, and not of men." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803). As Justice Jackson observed, "men have discovered no technique for long preserving free government except that the Executive be under the law." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 655 (1952) (Jackson, J., concurring). Selectively arresting and prosecuting opponents while shielding allies violates the rule of law.

### 2. Deterring Political Participation.

Retaliatory arrests and prosecutions create a powerful chilling effect on speech and political activity as individuals fear that expressing opposition views may

---

[18] Appropriately, these facts have generated an ethics grievance against defendant Alina Habba. Grievance Against Alina Habba, June 24, 2025, New Jersey Off. of Att'y Ethics, https://www.documentcloud.org/documents/25983507-cfa-nj-office-of-attorney-ethics-alina-habba-62425/.

15

subject them to criminal investigation, arrest and/or prosecution. In *Hartman v. Moore*, 547 U.S. 250 (2006), the Court held regarding an allegedly retaliatory prosecution, "[o]fficial reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right," *id*. at 256, quoting *Crawford-El v. Britton*, 523 U.S. 547, 588 n.10 (1998).

Mayor Baraka's alleged treatment exemplifies the danger that dissenters will fear criminal arrest and prosecution for voicing opposition and therefore be deterred from essential participation in the democratic political process.

### 3. Erosion of Public Trust Required for Effective Law Enforcement

Law enforcement is primarily dependent on the public volunteering information about suspected criminal activity. "[A]nonymous tips . . ., particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise 'perfect crimes.'" *Illinois v. Gates*, 462 U.S. 213, 237-38 (1983).

But people lose faith in law enforcement agencies when they perceive police or prosecutors as acting from partisan motives rather than a commitment to impartial justice.[19] Thus, law enforcement officials' partisan political actions jeopardize the safety of all Americans by undermining the prosecutors' ostensible purpose: crime

---

[19] Bruce A. Green & Fred C. Zacharias, *Prosecutorial Neutrality*, 2004 Wis. L. Rev. 837, 859 n.79 (2004).

control.

## C. The Conduct Resembles Authoritarian Practices

The conduct alleged here bears troubling resemblance to tactics employed by authoritarian regimes, where police and prosecutorial powers are used to suppress opposition and protect those in power. Such tactics include the following:

- **Loyalist Appointments:** Regime partisans are appointed to key police and prosecutorial positions.[20] Here, President Trump appointed as U.S. Attorney Defendant Alina Habba, Trump's former personal lawyer and spokesperson, who lacked any prior prosecutorial experience.

- **Selective Enforcements**: Opponents are targeted while allies are shielded.[21] Here, the day before Defendant Habba was sworn in as interim U.S. Attorney, she publicly stated, "[w]e could turn New Jersey red . . . Hopefully, while I'm there [in office], I can help that cause."[22]

---

[20] Steven Levitsky & Lucan Way, *The Rise of Competitive Authoritarianism*, 13 J. Democracy 61 (2002); Peter Krekó & Zsolt Enyedi, *Explaining Eastern Europe: Orbán's Laboratory of Illiberalism*, 29 J. Democracy 3, 39, 42 (2018); *Scott L. Cummings, The Autocratic Legal Playbook*, UCLA L. Rev., UCLA School of Law, Public Law Research Paper No. 25-31, 13 (August 2025).

[21] Kim Lane Scheppele, *Autocratic Legalism*, 85 U. Chi. L. Rev. 545, 550 (2018); Javier Corrales, *Autocracy Rising: How Venezuela Transitioned to Authoritarianism* 2, 14-15 (Rowman & Littlefield Publishing 2022); Cummings, *supra*, 28.

[22] Matt Friedman, *The Risks of Habba*, Politico (March 31, 2025), https://www.politico.com/newsletters/new-jersey-playbook/2025/03/31/the-risks-of-habba-00259965.

- **Pretextual Charges:** Meritless allegations are pursued to harass critics.[23] One of the stated grounds for the American Revolution was that the British king was prosecuting Americans for "pretended offenses."[24] Here, Judge André Espinosa condemned the "hasty arrest" and "swift . . . dismissal" suggesting a "worrisome misstep" by the prosecutor.[25]

- **Prejudicial Public Statements:** Officials amplify prosecutions through media campaigns that discredit opponents and control the narrative.[26] Here, Defendant Habba and Department of Homeland Security Official Tricia McLaughlin publicly vilified Plaintiff Baraka regarding his arrest.

### D. Judicial Oversight Is Essential

Federal courts need to intervene when police or prosecutorial power is abused in the extraordinary context presented here. Compensating Plaintiff Mayor Baraka under these circumstances would be invaluable in deterring further abuses of law

---

[23] Press Statement, U.S. Dep't of State, Venezuela: Political Prisoners Should be Released Immediately (Feb. 18, 2017), https://2017-2021.state.gov/venezuela-political-prisoners-shouldbe-released-immediately/.

[24] DECLARATION OF INDEPENDENCE, https://www.archives.gov/founding-docs/declaration-transcript (last visited June 14, 2026).

[25] Transcript p. 11, *United States of America v. Ras Baraka,* (D.N.J. May 21, 2025) (No. 25-mj-11131), https://www.nytimes.com/interactive/2025/05/23/us/mayor-baraka-judge-dismissal.html

[26] Bálint Magyar, *Post-Communist Mafia State: The Case of Hungary* 50-51, 223-24 (Bálint Bethlenfalvy, Ágnes Simon, Steven Nelson & Kata Paulin trans., 2016), https://dsps.ceu.edu/sites/pds.ceu.hu/files/attachment/event/773/magyarpostcommunistmafiastatecaseofhungaryfinal2016_1.pdf.

18

enforcement powers and supporting the impartiality upon which our criminal justice system is based.

## CONCLUSION

For the reasons stated, this Court should deny defendants' motion to dismiss.

Respectfully submitted,

Dated: June 26, 2026

*/s/ Robert Steinbaum*
Robert Steinbaum (NJ Bar # 000741980)
135 Norwood Ave.
Upper Montclair, NJ 07043
(973) 223-5629
rssteinbaum@gmail.com

Counsel for Amicus Curiae

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 29(b)(4) because it contains 20 pages.

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, size 14 font.

/s/ Robert Steinbaum

19

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2026, I electronically filed the foregoing Brief of Amicus Curiae with the Clerk of Court for the United States District Court for the District of New Jersey by using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

/s/ Robert Steinbaum