# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MAYOR RAS BARAKA, *in his official and personal capacities*,<br><br>  Plaintiff,<br><br>v.<br><br>ALINA HABBA and RICKY J. PATEL, *in their personal and official capacities*<br><br>  Defendants. | Civil Action No.<br>2:25-cv-06846-BRM-JBC<br><br><br>DECLARATION OF<br>THE HONORABLE EMANUEL MIRANDA,<br>DIRECTOR OF THE NEWARK DEPARTMENT<br>OF PUBLIC SAFETY |

EMANUEL ("MANNY") MIRANDA, of full age, declares as follows:

1. I serve as the Director of the Newark Department of Public Safety and have served in this role since my appointment on November 11, 2024, prior to which I served as Newark Chief of Police.

2. I grew up in Newark, NJ and have been a member of the Newark Police for twenty-five years.

3. I first became a Newark Police Officer in 2001, when I began my career as a patrolman in the 5th Precinct, serving the residents of the City of Newark's South Ward.

4. In 2005, I joined the Detective Bureau, a city-wide position, and was promoted in 2016 to the rank of Sergeant.

5. In 2017, I was appointed to be Commander of the Homicide Task Force, a multi-agency county-wide position, comprised of detectives of the Newark Police Division and those across the county, and the Essex County Prosecutor's Office and those across the county.

6. In 2018, I was promoted to the rank of Lieutenant within the county-wide Homicide Task Force, and a year later was promoted as Commander of the Newark Police Division's Robbery Unit.

7. In 2020, I was promoted to the rank of Captain and joined as a special assistant to the Office of the Public Safety Director, until I was named Newark Chief of Police in 2022.

8. In the role of Newark Chief of Police, I interacted with a range of agencies and departments on the local, state, and federal level.

9. Throughout my twenty-five-year career with the police, depending on the case or operation, I have interacted with various agencies and departments on the local, state, and federal level, including but not limited to the HSI, FBI, DEA, ATF, New Jersey State Police, Essex County Police, etc.

10. Prior to May 9, 2025, I had a longstanding positive relationship with Homeland Security Investigations (HSI) Supervisor Ricky Patel, who is a defendant in this litigation. Prior to that date, we ran operations together, held a joint press conference together, and reviewed operational plans for the city.

11. On May 9, 2025, three congresspeople went to conduct a statutory inspection of the facility, and Mayor Baraka was invited to join them for a press conference that would follow the inspection.

12. There was nothing particularly unique about the May 9, 2025 plans, since Mayor Baraka had already previously held press conferences at Delaney Hall; congressional representatives are statutorily empowered to inspect detention centers; and the protesters had already been there for weeks, nonviolently.

13. Prior to May 9, 2026, protesters had already been assembling outside of Delaney Hall for weeks, and with zero incidents. There had been no arrests or back-ups that needed to be called to manage them, they were simply peacefully assembling until this point in time.

14. I was frankly shocked to discover that HSI Supervisor Ricky Patel was personally on the scene at Delaney Hall on May 9, 2025. It is highly unusual for a special agent in charge to be on the scene of an operation. Operations are conducted every day, and the special agent in charge is usually away from the scene. On occasion, the special agent in charge may want to be on a scene to assist with overseeing more granular operations in extraordinary circumstances, such as in the scenario of a mass arrest or a large violent resistance, but none of these factors were present at Delaney on or before May 9, 2025.

15. I was also shocked to see that Ricky was present at Delaney Hall on May 9, 2025 without even a courtesy call or a notification stating that he and his agents would be in and around that area.

16. Neither Ricky nor any federal agents had not been at Delaney Hall prior to May 9, 2025.

17. I learned about the Mayor's arrest from his security detail (comprised of a Newark Police Detective, and a Newark Police Lieutenant), who informed me while he was being arrested at Delaney Hall.

18. I then called Defendant Alina Habba directly, who was then serving as the Interim U.S. Attorney, who confirmed the arrest.

19. I then immediately called Ricky's cellphone, not knowing that he was at the center of the events that day. Ricky did not pick up, nor did he call me back. Again, all of this was unusual, as our offices are in regular interaction, and he would have alerted me in advance if he or federal agents intended to go to Delaney Hall.

20. It is a common courtesy, and general practice for federal agents to notify locals that they will be at a location in the city to conduct an operation, and they sometimes request back-up and assistance.

21. The first time I interacted with Ricky that day was when I arrived at 620 Frelinghuysen Avenue, the HSI Office where Mayor Baraka was taken for processing (paperwork, fingerprinting, a mugshot, and interviewing) prior to appearing before a federal judge.

22. Ricky blew me off, and said he would call me back, but I did not hear from him all weekend, which is an aberration of professional courtesy and an aberration of what had been up until that day our usual manner of communication.

23. It is also very unusual for a special agent in charge to list his name on a complaint, especially for a disorderly person's offense. I would even say that this is unheard of.  In all my years on the police force, I have never seen the special agent in charge of any state or federal agency list their name on a filing charge document.

24. It is also very unusual for federal agents to charge an individual with a state-level offense, although they are on state property. The federal government does not have jurisdiction on state property to charge a state-level offense; federal agents will only charge individuals with a state-level offense when they are on federal property. It is for this reason that federal agents often call on the local Newark Police Department to help implement security at Delaney Hall.

25. For example, in early June 2026, protests ignited at Delaney Hall over detainee hunger strikes and the poor conditions inside the facility. More than 80 people were mass arrested by state police, not federal agents, outside Delaney Hall – none of which resulted in federal

charges, and all of which resulted in state charges such as failure to disperse, obstruction of justice, and rioting, all of which were handled in county or municipal court.

26. In other scenarios at Delaney Hall where federal agents do charge a protester for a federal offense, it is generally for the federal crime of an assault on an officer.

27. Also, by way of example, by Monday following Mayor Baraka's Friday afternoon arrest, an ICE assistant director asked the Newark Police Department to assist with protesters who became emboldened by the Mayor's arrest.

28. Ricky had not picked up the phone to communicate with me all weekend since the Mayor's arrest. When he did, it was to request, for the first time, that I send Newark Police to Delaney Hall to assist with the protesters.

29. I reviewed a statement by the GEO security guard who acknowledged and confirmed that he invited and let the Mayor onto the property because he wanted to calm the crowd down.

30. Based on my twenty-five years of experience and based on what I know leading up to and through the day in question, it does not make any sense that the Mayor would be charged with trespass by federal agents. He was invited and led into the fence area, was sequestered there, and upon request voluntarily departed, only to then be arrested on public property. He was asked to leave and complied. Note that he was not charged with failure to disperse or with obstruction of justice. Had they truly believed that he committed a petty disorderly offense, they would have asked the Newark Police Department for assistance (two members of whom comprised the Mayor's security detail and were present). The charge itself was improper, but even if it were, the arrest itself doesn't make any sense since the Mayor would have just appeared in court if given a citation.

31. My overall impression is that the entire episode related to the events on May 9, 2025 which

led to the arrest of Mayor Baraka all was just a political stunt.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Newark, NJ on July 24, 2026.

Director Emanuel Miranda (Jul 24, 2026 21:47:08 EDT)

EMMANUEL ("MANNY") MIRANDA
DIRECTOR,
NEWARK DEPARTMENT OF PUBLIC SAFETY